UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:   5:26-cv-02120-AB | Date:  May 6, 2026 |
|---|---|

| Title:  *Orlando Olivar v. David Marin, et al.* |
|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS [DKT. NO. 1]**

Petitioner Orlando Olivar ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Habeas Petition") on April 24, 2026. Dkt. No. 1. Respondents filed a timely Opposition (Dkt. No. 15) and Petitioner filed a Reply thereafter (Dkt. No. 16). For the reasons set forth below, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus, **LIFTS** the Stay Issued on April 29, 2026 (Dkt. No. 14), and finds the TRO Application (Dkt. No. 3) is **MOOT**.

## I.     BACKGROUND

This action is the latest in Petitioner's long history with U.S. immigration officials. At an unknown date, Petitioner first entered the United States without being admitted or paroled by an immigration officer. Opp'n, Decl. of Brandon Jimenez ("Jimenez Decl.") ¶ 4.

On August 5, 2013, Petitioner was convicted of trespassing in violation of the

California Penal Code § 602(K) and sentenced to 8 days in jail and 12 months' probation. *Id.* ¶ 5. On April 7, 2014, Petitioner was convicted of possession of a controlled substance in violation of California Health and Safety Code § 11377(A). He was sentenced to an eighteen month diversion program. *Id.* ¶ 6.

On May 7, 2014, Petitioner was arrested by the Los Angeles Fugitive Operation Team ("LAFO"), where he claimed he was a member of the organization MS-13. *Id.* ¶ 7. On the same date, the Immigration and Customs Enforcement ("ICE") Office of Enforcement and Removal Operations ("ERO") served Petitioner with a Notice to Appear and placed him under removal proceedings. *Id.* ¶ 8.

On June 4, 2024, an immigration judge granted Petitioner a voluntary departure. *Id.* ¶ 9. On July 2, 2014, ERO witnessed Petitioner depart from the United States to El Salvador via Los Angeles International Airport. *Id.* ¶ 10.

On November 3, 2014, the Pharr Police Department in Pharr, Texas arrested Petitioner in the middle of a port of entry as he attempted to illegally enter the United States without proper inspection. *Id.* ¶ 11. That same day, U.S. Border Patrol took custody of Petitioner to effectuate his removal. *Id.* On November 4, 2014, Petitioner was served a Notice and Order of Expedited Removal and, on January 8, 2015, ERO removed Petitioner to El Salvador through the Laredo, Texas port of entry. *Id.* ¶¶ 12, 13.

Petitioner re-entered the United States at an unknown place without being admitted or paroled by an immigration officer. *Id.* ¶ 14. In 2023, during a gang suppression operation, Petitioner was arrested pursuant to search and arrest warrants on MS-13 gang members. Petitioner was charged with conspiracy to distribute drugs and drug distribution. *Id.* ¶ 15. This case is ongoing.

An ICE detainer was placed with the U.S. Marshals Service on November 30, 2023. *Id.* ¶ 18. On March 19, 2026, immediately after attending a hearing related to Petitioner's drug distribution criminal case, Petitioner was arrested by ERO at the U.S. Federal Courthouse located at 350 W 1st Street, Los Angeles, California 90012. The Respondents served a Notice of Intent/Decision to Reinstate Prior Order upon Petitioner on the same date. *Id.* ¶ 20. The Notice of Intent/Decision to Reinstate Prior Order indicates that Petitioner did not confirm whether or not he intended to make a statement contesting this determination, instead refusing to sign the document. Opp'n Ex. C.

On April 13, 2026, an Immigration Judge affirmed DHS' negative finding of

reasonable fear. Jimenez Decl. ¶ 23. On April 28, 2026, Petitioner filed a Motion to Reopen his Credible Fear Review with the Immigration Judge. Reply, Ex. A & B.

On April 24, 2026, Petitioner filed both the Habeas Petition and TRO Application. Respondents planned to remove the Petitioner in April 30, 2026, but pursuant to this Court's Stay Issued on April 29, 2026, Dkt. No. 14, Petitioner's removal has been postponed. Having reviewed the Parties briefing, the Court denies the requested relief.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Habeas relief is available to those who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In federal habeas proceedings, "it is the petitioner who bears the burden of proving his case." *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A petitioner is required to prove their case by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III.    DISCUSSION

### A. Jurisdictional Analysis

As an initial matter, the Court will assess whether it has jurisdiction to review this case. Respondents argue that 8 U.S.C. § 1252(g) and 1252(b)(9) strips this Court of jurisdiction. Opp'n at 6-8.

8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." In *Jennings v. Rodriguez*, the Supreme Court confirmed this jurisdictional bar is a narrow one, pertaining only to those claims that arise from the three specified actions. 583 U.S. 281, 294 (2018). Additionally, the Ninth Circuit has held Section 1252(g) strips courts of jurisdiction over claims that challenge a decision to execute a removal order, even if there is a pending application for relief. *Rauda v. Jennings*, 55 F.4th 773; 778 (9th Cir. 2022); *see also Ramirez v. Santacruz Jr.*, 2025 WL 3485738, at *2 (C.D. Cal. Dec. 4, 2025).

Courts, however, still maintain jurisdiction "to decide a purely legal question

that does not challenge the Attorney General's discretionary authority." *Ibarra-Perez v. United* States, 154 F.4th 989, 996 (9th Cir. 2025). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at 997. Thus, the key question is whether Petitioner's action challenges a discretionary decision to execute a removal order or whether it challenges the lawfulness of his detention.

Here, the Court agrees with Respondents to the extent the requested relief seeks to stay Respondents' execution of a removal order. For that reason, the Court lifts the Stay issued on April 29, 2026.[1] Moreover, to the extent Petitioner seeks to stay any removal pending adjudication of his April 28, 2026 Motion to Reopen Credible Fear Review, the Court is not permitted to do so. *See Ramirez v. Santacruz Jr.*, 2025 WL 3485738, at \*2 (C.D. Cal. Dec. 4, 2025) (finding the court is barred by § 1252(g) from enjoining the government from removing him pending adjudication of the merits of Petitioner's case).

However, the Court disagrees that § 1252(g) serves as a jurisdictional bar to Petitioner's underlying Habeas Petition. The Habeas Petition does not challenge the discretionary decision to execute removal orders; rather, the Habeas Petition challenges the procedures used to detain Petitioner pending his ongoing immigration proceedings. Petitioner claims that his detention violated constitutional due process protections, was unlawful, and failed to comply with ICE's own regulations. *See* Habeas Pet. at 9-11; Reply at 7-11. None of these claims challenge the discretionary decision to execute a removal order; rather they challenge Respondents' practices in detaining Petitioner. Accordingly, the Court finds that § 1252(g) is not a jurisdictional bar to Petitioner's underlying Habeas Petition.

The Court also finds that § 1252(b)(9) does not bar jurisdiction in this case. Under § 1252(b)(9):

> (b) With respect to *review of an order of removal under subsection (a)(1)*. . . (9) Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from* any action taken or proceeding brought to remove an alien

---

[1] At the time of the Stay, the Court had jurisdiction to determine whether it had jurisdiction to entertain the action. Pursuant to this jurisdiction, the Court entered the Stay to ensure Petitioner was not removed pending the Court's decision. At this time, the Court understands it does not have jurisdiction to enjoin Respondents from executing a removal order and, thus, lifts the Stay.

from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

(emphasis added). As the *Jennings* Court determined, § 1252(b)(9) is not a jurisdictional bar to review when a party "[is] not asking for review of an order of removal; [is] not challenging the decision to detain them in the first place or to seek removal; and [is] not even challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294-95. While Respondent has not provided clear details on why this provision serves as a jurisdictional bar, *see* Opp'n at 8, this Court observes that the Habeas Petition does not challenge a decision to detain, an order of removal, or a part of the process by which their removability will be determined. Rather, Petitioner claims that the processes used to detain Petitioner were constitutionally deficient and unlawful. In short, these claims are not barred by § 1252(b)(9). Thus, the Court maintains jurisdiction to hear Petitioner's claims in their Habeas Petition.

## B. Habeas Petition Analysis

Having determined it has jurisdiction, the Court now turns to merits of Petitioner's Habeas Petition. Petitioner's Reply reframes Petitioner's original five grounds into three claims. The Court will rely on this framing for the purpose of this Order.[2]

### i.    Petitioner's Custody Did Not Violate Procedural Due Process

Petitioner first argues that his detention violates procedural due process. Habeas Pet. at 9; Reply at 7-8. Under the Fifth Amendment's Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zavydas v. Davis*, 533 U.S. 678, 693 (2001). Due Process protection extends to the context of immigration removal proceedings. *A.A.R.P. v. Trump*, 605

---

[2] The Reply compresses Grounds 2, 3, and 5 from the Habeas Petition into Claim Two.

U.S. 91, 94 (2025). While the liberty interests of noncitizens are not "coextensive" with those of U.S. citizens, noncitizens are nevertheless "entitle[d] to due process of law in deportation proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022).

Petitioner's "due process claim is analyzed in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Momtazian v. Noem*, 2025 WL 4231579, at *2 (C.D. Cal. Dec. 25, 2025). Then, courts apply *Mathews v. Eldridge* test to determine whether there is a procedural due process violation. Under the test, courts balance three factors: "(i) the private interest, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### a.  Protected Liberty Interest Under the Due Process Clause

The Court first assesses whether Petitioner has a protected liberty interest under the Due Process Clause when he was released under the Bail Reform Act, pursuant to an unrelated criminal proceeding, and detained by ICE pursuant to a final order of removal. As an initial matter, the Court observes that Petitioner has cited no case law holding that a release in a criminal context vests a protected liberty interest during an immigration proceeding.

Nevertheless, the Court determines that Petitioner has a vested liberty interest based on analogous holdings in the criminal and immigration contexts. As several courts have observed, release on bond is a protectable liberty interest, "similar to the liberty interests of individuals on pre-parole, parole, and probation." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969-70 (N.D. Cal. 2019). In the immigration context, courts have also held that an individual released from custody by ICE has a "protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Petitioner's case, which presents a hybrid situation involving release pursuant to a criminal case and re-detention pursuant to a civil immigration proceedings, presents no meaningful differences with respect to the liberty interest at issue. Whether Petitioner was released by ICE in the first instance or through the Bail Reform Act, he maintains the same liberty interest be free from custody.

Accordingly, the Court determines that Petitioner has a protected liberty interest.

### b. *Mathews v. Eldridge* Test

Next, the Court turns to the three-part *Mathews v. Eldridge* balancing test. As an initial matter, the *Mathews* test is a "flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz,* 53 F.4th at 1206.

The first *Mathews* factor weighs in Petitioner's favor. As noted above, Petitioner has a private interest to remain free from custody. However, there are several facts that limit the strength of this interest. *See Id.* at 1208 ("In short, in evaluating Rodriguez Diaz's interests under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."). Petitioner has been in custody for less than two months and, in that time, he had an opportunity to contest his redetention, appear before an Immigration Judge and had a credible fear assessment. Jimenez Decl. ¶ 23; Opp'n Ex. C. All of these factors are also taken into account when assessing the strength of the first *Mathews* factor.

The second *Mathews* factor weighs in favor of Respondents. Under this factor, the Court assesses "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute safeguards." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Petitioner was redetained pursuant to reinstatement of a prior removal order under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. The Ninth Circuit has observed that these regulations provide "significant procedural safeguards against erroneous reinstatements." *Morales-Izquierdo v. Gonazles*, 486 F.3d 484, 495 (9th Cir. 2007). "Given the narrow and mechanical determinations immigration officers must make and the procedural safeguards provided by 8 C.F.R. § 241.8, the risk of erroneous deprivation is extremely low." *Id.* at 496.

While Petitioner argues that pre-deprivation process is required, Petitioner does not sufficiently demonstrate why the existing regulations are insufficient to protect the Fifth Amendment Due Process interest or why pre-detention process is required. Instead, Petitioner points the Court to a number of cases which are distinguishable from the present case. *See, e.g., Lopez v. Dept. of Homeland Sec.*, NO. EDCV 25-03607-KK-ADS (C.D. Cal. Apr. 23, 2026) (finding pre-deprivation

process is required prior to an redetention when an individual has been released on an Order of Recognizance, not a notice of reinstatement), *Pham v. Warden*, 2026 WL 673404 (E.D. Cal. Mar. 10, 2026) (no application of the *Mathews* test). In light of this, the Court follows the holding in *Morales-Izquierdo* and finds that the risk of erroneous deprivation through removal order reinstatements is low. Accordingly, this factor weighs in favor of Respondents.

Finally, the Court turns to the third *Mathews* factor and considers the government's interest. "[T]he government clearly has a strong interest in preventing aliens from remaining in the United States in violation of our laws." *Rodriguez Diaz*, 53 F.4th at 1208. Indeed, the Supreme Court has instructed that, when conducting a *Mathews* analysis, the Court "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). These factors bear significant weight here and the Court finds Respondents' interest is substantia. This factor weighs heavily in favor of Respondents.

Considering these three factors, the Court concludes two of the three factors weigh heavily for the Respondents. Moreover, the first factor is cabined by facts related to Petitioner's detention. Accordingly, the *Mathews* test shows that there has been no violation of constitutional procedural due process protections. The Court denies Petitioner's relief under this claim.

### ii.     Petitioner Has Not Demonstrated His Detention is Unlawful

Next, Petitioner argues that his detention was unlawful since it was pursuant to an ICE detainer when there was not executable removal order present. Petitioner, however, has not met his burden of demonstrating this claim by a preponderance of the evidence. *Davis v. Woodward*, 384 F.3d 628, 638 (9th Cir. 2004). First, with respect to the removal order, Petitioner appears to argue that the removal order was executed after he was arrested, making the arrest deficient. Reply at 9. However, that is not the case. The reinstatement of the removal order was *noticed* upon Petitioner after he was arrested but there is nothing to suggest that the reinstatement was not effective at the time of arrest. Indeed, it is more than plausible that the reinstatement was completed prior to the arrest but only served upon Petitioner afterwards. In short, Petitioner has not demonstrated that that the removal order was reinstated after his arrest.

The same is true of Petitioner's argument that the Respondents arrested him without a warrant. Petitioner has demonstrated that he has not seen a warrant in this

case but has not sufficiently shown that there was no warrant at all. Reply, Ex. D ("Sedlander Decl.") ¶ 4. Based on this, the Court cannot conclude that Petitioner met his burden to demonstrate that he was subject to a warrantless arrest. Accordingly, the Court denies relief pursuant to this claim.

### iii. Petitioner Has Not Demonstrated that ICE Failed to Follow Its Own Regulations

Finally, Petitioner argues that ICE failed to follow its own procedures. Habeas Pet. at 11; Reply at 10-12. Under 8 C.F.R. § 241.8, to effectuate a reinstatement of a removal order, an immigration is required to make three determinations. First, an officer must determine whether the alien has been subject to a prior order of removal. The immigration officer must obtain the prior order of exclusion, deportation, or removal relating to the alien. Second, the immigration officer must determine whether the identity of the alien is in fact someone who was previously removed. Finally, the officer must determine whether the alien unlawfully entered the United States. 8 C.F.R. § 241.8(a).

Petitioner has not met demonstrated that ICE failed to make any of the requisite determinations. Respondents note that ICE identified Petitioner "as a prior removal who has re-entered the United States without authorization and subject to enforcement action[.]" Jimenez Decl. ¶ 18. Moreover, Respondents included in their Opposition the removal orders executed on November 4, 2014 and confirmation that Petitioner was removed on January 8, 2025. Opp'n, Ex. A, B. Petitioner suggests that Respondents were required to provide a considerable amount of additional information, including (1) any indication of which prior removal order they were referencing in that statement; (2) any information as to whether the ICE officers confirmed it was Mr. Olivar who was subject to those orders and how they confirmed that; (3) any information as to whether the ICE officers obtained a copy of said removal order; and (4) any information as to whether Mr. Olivar was given notice or an opportunity to contest that determination prior to his removal order being reinstated. Reply at 11.

First, it is not stated in the relevant regulations that a document containing this degree of detail is required to be submitted to the Petitioner prior to reinstatement. Instead, the regulations only require that an immigration officer make the three aforementioned findings. Petitioner does not provide any evidence that ICE failed to make the requisite findings; rather, he points to the Jimenez Declaration and argues that the absence of certain information suggests failure to follow the regulations. This is despite the fact the regulations do not require this level of detail.

Moreover, an examination of Respondents' exhibits further undermine Petitioner's argument. Exhibit B is order of removal issued on November 4, 2014 as well as the verification of removal. Opp'n, Ex. B. Exhibit C is Notice of Intent to Reinstate based on the November 4, 2014 removal. Opp'n, Ex. C. Exhibit C further indicates that Petitioner refused to sign and make a statement to contest the reinstatement at that time. *Id.* The evidence before the Court suggests Respondents followed the applicable regulations. Accordingly, the Court concludes that Petitioner has not met his burden to demonstrate habeas relief is warranted on this claim.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's Habeas Petition is **DENIED.** As the Habeas Petition has been denied, Petitioner's pending TRO Application is now **MOOT.** The Court's Stay, issued on April 29, 2026, is also **LIFTED.**

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk <u>EVC</u>